BAM/APT: USAO2022R00720

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

USDC - GREENBELT
'26 JUL 13 PM2:59

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | CRIMINAL NO. TDC 26 CR 233 |
| | * | |
| v. | * | (Conspiracy to Commit Wire Fraud, |
| | * | 18 U.S.C. § 1349; Forfeiture, 18 |
| | * | U.S.C. § 981(a)(1)(C), 21 U.S.C. |
| | * | § 853(p), and 28 U.S.C. § 2461(c)) |
| CARMEN HERNANDEZ, | * | |
| | * | |
| Defendant. | * | |

**INFORMATION**

**COUNT ONE**
(Conspiracy to Commit Wire Fraud)

The United States Attorney for the District of Maryland charges that:

At all times material to the Information:

1.      Defendant **CARMEN HERNANDEZ** was a resident of Hyattsville, Maryland. During the relevant time, **HERNANDEZ** owned and worked at Integrated Multi Services Inc. ("IMS"), a business located in Silver Spring, Maryland, which offered a variety of services, including tax preparation, bankruptcy, and immigration-status adjustment.

2.      CO-CONSPIRATOR #1 was a resident of Laurel, Maryland, who worked at IMS and acted as the *de facto* principal of the business.

3.      CO-CONSPIRATOR #2 was a resident of Laurel, Maryland and the spouse of CO-CONSPIRATOR #1.

4.      The Small Business Administration ("SBA") was an agency of the United States.

**The Paycheck Protection Program**

5.      In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to provide emergency financial assistance to millions of Americans

who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of billions of dollars in forgivable loans to small businesses for job retention and certain other expenses through a program referred to as the Paycheck Protection Program ("PPP"). The SBA was responsible for administering the PPP.

6.    To provide relief to small businesses expeditiously, the SBA delegated lending authority to third-party participating PPP lenders, such as Kabbage, Inc. ("PPP lenders"). To qualify for a PPP loan, an applicant business needed to be in operation as of February 15, 2020, and to file a PPP loan application which stated the purpose of the PPP loan, the average monthly payroll, and the number of employees.

7.    In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses, including copies of forms submitted to the United States Internal Revenue Service ("IRS"), such as IRS Forms 940 and 941. The business's number of employees and average monthly payroll costs for the 12-month period prior to the pandemic (prior to January 21, 2020) determined the amount of PPP funding that the business could receive. Before March 2021, the PPP loan calculation for self-employed borrowers was based on IRS Form Schedule C—specifically, the annual net profits amount disclosed on the form. Therefore, an applicant seeking a PPP loan as a sole proprietor or independent contractor had to submit a Schedule C in support of the PPP loan application.

8.    Businesses that received PPP funds could only use the funds for qualifying expenses, including payroll, rent, and utilities. Businesses that used at least 60% of the PPP funds on payroll were entitled to have the loan forgiven in its entirety.

9.    PPP and forgiveness applications were submitted electronically and received by computer servers located outside of Maryland.

**The Conspiracy and the Scheme to Defraud**

10.    Beginning in or around March 2020 and continuing through at least in or about May 2023, in the District of Maryland and elsewhere, the defendant,

**CARMEN HERNANDEZ,**

did knowingly combine, conspire, and agree with CO-CONSPIRATOR #1, CO-CONSPIRATOR #2, and others known and unknown to the United States Attorney, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud the United States and PPP lenders, and to obtain and attempt to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

**The Object of the Scheme to Defraud**

11.    It was the object of the conspiracy and scheme to defraud for **HERNANDEZ,** CO-CONSPIRATOR #1, CO-CONSPIRATOR #2, and others known and unknown to the United States Attorney, to unjustly enrich themselves by (1) fraudulently obtaining and attempting to obtain PPP loan proceeds for their own personal use and benefit; and (2) fraudulently obtaining and attempting to obtain fees or kickbacks from owners of purported businesses for whom they helped obtain PPP loans, often in the amount of up to 10% of the amount of the PPP loans obtained, in return for the submission of the false and fraudulent PPP loan applications.

**Manner and Means of the Scheme to Defraud**

It was part of the conspiracy and scheme to defraud that:

3

12.     **HERNANDEZ**, CO-CONSPIRATOR #1, and others solicited IMS clients and others to use IMS's document preparation services to apply for PPP loans via telephone, text message, and email. This outreach was intended to induce many people to apply for, and obtain, PPP loans through IMS.

13.     **HERNANDEZ,** CO-CONSPIRATOR #1, and others instructed PPP loan applicants on what documents they needed to provide IMS to support their PPP loan applications.

14.     **HERNANDEZ,** CO-CONSPIRATOR #1, and others obtained and sought to obtain PPP loan applicants' PPP log-in credentials to submit false and fraudulent PPP loan applications.

15.     **HERNANDEZ**, CO-CONSPIRATOR #1, and others created and caused the creation of false and fraudulent PPP loan applications for purported businesses, including for businesses that did not have employees, sales, or operations.

16.     **HERNANDEZ,** CO-CONSPIRATOR #1, and others submitted and caused the submission of false and fraudulent PPP loan applications, which resulted in interstate wire communications, including from Maryland to locations outside Maryland.

17.     **HERNANDEZ**, CO-CONSPIRATOR #1, and others created and caused the creation of materially false and fraudulent tax records in support of PPP loan applications, including false Schedule C forms.

18.     **HERNANDEZ**, CO-CONSPIRATOR #1, and others created and caused the creation of false and fraudulent business documents in support of PPP applications, including false invoices.

19.     **HERNANDEZ**, CO-CONSPIRATOR #1, and others submitted and caused the submission of materially false and fraudulent information, including purported tax information and fake business documents, to PPP lenders.

20.    **HERNANDEZ**, CO-CONSPIRATOR #1, and others submitted and caused the submission of information to PPP lenders, resulting in interstate wire communications that began in Maryland.

21.    **HERNANDEZ**, CO-CONSPIRATOR #1, and others caused and sought to cause PPP loan borrowers to write alleged payroll checks to make it appear as if the PPP loan proceeds were being used legitimately.

22.    **HERNANDEZ**, CO-CONSPIRATOR #1, and others communicated and caused communications with PPP loan borrowers about applying for loan forgiveness and applying for multiple PPP loans.

23.    **HERNANDEZ,** CO-CONSPIRATOR #1, and others obtained a fee and kickback equal to approximately 10% of the loan value for preparing and submitting PPP loans applications.

24.    **HERNANDEZ**, CO-CONSPIRATOR #1, and others submitted  and caused the submission of more than 100 materially false and fraudulent PPP loan applications on behalf of more than 50 PPP loan borrowers, resulting in losses exceeding $1.5 million.


18 U.S.C. § 1349

## FORFEITURE ALLEGATIONS

The United States Attorney for the District of Maryland further alleges that:

1.      Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c).

### Wire Fraud Forfeiture

2.      Upon conviction of the offense in Count One of the Information, the defendant,

### CARMEN HERNANDEZ,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud.

### Substitute Assets

4.      If any of the property described above, as a result of any act or omission of the defendant:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

07/13/2026
Date

Kelly O. Hayes
United States Attorney

7